IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OHIO
EASTERN DIVISION

THOMAS A.,[1]

      **Plaintiff,**

  v.

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

Civil Action 2:24-cv-4200
Judge Algenon L. Marbley
Magistrate Judge Elizabeth P. Deavers

## REPORT AND RECOMMENDATIONS

Plaintiff, Thomas A., brings this action under 42 U.S.C. § 405(g) for review of a decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Supplemental Security Income benefits ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition, (ECF No. 11), Plaintiff's Reply (ECF No. 12), and the administrative record (ECF No. 7). For the following reasons, it is **RECOMMENDED** that the Court **SUSTAIN** Plaintiff's Statement of Errors (ECF No. 9) and **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g), for further administrative proceedings.

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

I. BACKGROUND

Plaintiff protectively applied for SSI on March 29, 2022, alleging disability beginning January 1, 2014, due to back problems in L3, L4, L5, numbness in his legs, deafness in his right ear, cysts on left kidney, anxiety, and dysthymic disorder. (R. at 312-18, 340.) Plaintiff's application was denied initially in September 2022, and upon reconsideration in December 2022. (R. at 183-93, 196-205.) On August 21, 2023, Plaintiff, who was represented by counsel, appeared and testified at a hearing held by an administrative law judge. (R. at 158-82.) On October 6, 2023, Jason P. Tepley (the "ALJ") issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 13-41.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-7.) This matter is ripe for judicial review.

II. RELEVANT RECORD EVIDENCE

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports, and testimony as to his conditions and resulting limitations. Given the claimed errors raised by Plaintiff, rather than summarizing that information here, the Court will refer and cite to it as necessary in the discussion of the parties' arguments below.

I. ADMINISTRATIVE DECISION

On October 6, 2023, the ALJ issued the non-disability determination. (R. at 13-41.) At

step one of the sequential evaluation process,[2] the ALJ found that Plaintiff has not engaged in substantially gainful activity since March 29, 2022, the application date. (R. at 18.) The ALJ found that Plaintiff had the following severe impairments: degenerative disc and joint disease of the spine; obesity; hearing loss; an anxiety disorder; and a mood/dysthymic disorder. (*Id.*) He further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19.)

Before proceeding to step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC"), in pertinent part, as follows:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except [Plaintiff] could occasionally stoop, kneel, crouch, and crawl. He could occasionally climb ramps and stairs and could occasionally balance. [Plaintiff] should avoid climbing ladders, ropes, and scaffolds. [Plaintiff] should avoid exposure to vibration. He should avoid exposure to moving,

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> mechanical parts. He should avoid exposure to high, exposed places. [Plaintiff] should avoid commercial driving. [Plaintiff] could understand, remember, and carry out simple tasks. He could tolerate occasional changes in a routine work setting, explained in advanced. [Plaintiff] could tolerate occasional interaction with coworkers, supervisors, and the general public. [Plaintiff] should avoid work requiring satisfaction of production quotas or involving assembly line pace. [Plaintiff] can work in an environment with no more than a moderate noise level, defined by the SCO. [Plaintiff] would require a one-handed assistive device for all standing and walking of any duration, but his opposing upper extremity could perform lifting/carrying up to the exertional requirements of sedentary work.

(R. at 21.)

At step four, the ALJ determined that Plaintiff has no past relevant work. (R. at 33.) At step five, relying on the VE's testimony, the ALJ concluded that Plaintiff can perform jobs that exist in significant numbers in the national economy such as a lens gauger or screener. (R. at 33-34.) The ALJ therefore concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since March 29, 2022, the date the application was filed. (R. at 35.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

4

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 119 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**V.     ANALYSIS**

Plaintiff raises two statements of error. First, he contends that the ALJ improperly evaluated the opinions of the state agency psychologists, Audrey Todd, Ph.D. and Robyn Murry-Hoffman, Psy.D. (ECF No. 9 at 11-20.) Additionally, Plaintiff contends that the ALJ erred in evaluating the opinion from his primary care provider, Audrey Baker, APRN CNP, by, *inter alia*, failing to properly consider the issue of supportability. (*Id.* at 11-20.) As discussed below, the Undersigned agrees that the ALJ did not properly consider the issue of supportability in his evaluation of the opinion from Plaintiff's primary care provider, Audrey Baker. This finding obviates the need for an in-depth analysis of the remaining issues. Thus, the Undersigned need

not, and does not, resolve the alternative bases that Plaintiff asserts support reversal and remand. Nevertheless, on remand, the ALJ may consider Plaintiff's other arguments if appropriate.

### A. The Medical Opinion of Audrey Baker, APRN-CNP

The starting point for analysis is a discussion of the regulations governing the ALJ's consideration of medical opinions. Because Plaintiff filed his application after March 27, 2017, it is governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. § 416.920c (2017). The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)–(5). Objective medical evidence is defined as "medical signs, laboratory findings, or both." 20 C.F.R. § 416.913(a)(1). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 416.913(a)(3). "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. § 416.913(a)(4). "Medical opinion" is defined as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions....
>
> (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

> (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes....

20 C.F.R. § 416.913(a)(2)

The governing regulations include a section entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. § 416.920c. These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c(a). Instead, they provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 416.920c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Indeed, the regulations require an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or

decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors. 20 C.F.R. §416.920c(b)(2).

The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)−(2). In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reuse v. Comm'r of Soc. Sec.*, No. 5:20−CV−1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96−2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 416.927(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 416.920c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)).  "In other words, "supportability" is the extent to which a medical source's own objective findings and supporting explanations substantiate or support the findings in the opinion." *Goodman v. Soc. Sec. Admin.*, 2024 WL 623894, at *14 (N.D. Ohio Feb. 14, 2024).

8

Briefly, for context, the medical opinion at issue is Ms. Baker's Primary Care Medical Statement completed in August 2023. (R. at 1231-32.) On the form, Ms. Baker described Plaintiff's diagnoses as depression and back pain. (R. at 1231.) Further, she noted Plaintiff's symptoms as back pain, dizziness with a change in position, fatigue, disturbed sleep, dysphoric mood, and shortness of breath with exertion. (*Id.*) She indicated by check mark that Plaintiff would need unscheduled breaks throughout the workday due to muscle weakness, chronic fatigue, pain/parasthesias, numbness, and adverse effects of his medication. (R. 1231-1232.) She also indicated by check mark that Plaintiff would need a cane or other hand-held assistive device because of problems with balance, pain, dizziness, and weakness. (R. at 1232.) Additionally, she noted by check mark that Plaintiff's impairments would likely cause him to have good and bad days, and he would also likely be absent due to his impairments more than four days per month. (*Id.*) Finally, she noted by check mark that the symptoms and functional limitations described in her evaluation were reasonably consistent with the signs, clinical findings, and labs or tests. (*Id.*) With respect to Plaintiff's sit/stand/walk limitations, Ms. Baker stated that additional testing was needed. (R. at 1231.)

The ALJ found Ms. Baker's assessment "no more than partially persuasive," discussing it in this way:

> The [ALJ] has read and considered the August 2023 opinion of Ms. Baker APRN, CNP. Ms. Baker completed a functional form on behalf of [Plaintiff]; however, it should be noted the form was not completed in its entirety. The provider did leave portions of the form blank, citing [Plaintiff] would require additional testing to complete such questions. For example, the provider did not provide an opinion regarding exertional limitations. The provider assessed [Plaintiff] would require unscheduled breaks due to muscle weakness, pain, and fatigue; would need a cane; would have good days and bad days; and would miss more than 4 days of work per

9

> month. The [ALJ] has not adopted this opinion verbatim. First, the form was not completed in its entirety. Second, while the nurse practitioner cited [Plaintiff] would require breaks due to muscle weakness, pain, and fatigue, such significant breaks were not entirely consistent with the objective evidence of record. Objectively the file supported no more than more recently documented slight lower extremity weakness at 4/5 with 5/5 being normal. Additionally, [Plaintiff]'s pain was generally managed with medications, including dual treatment Suboxone. The [ALJ] find[s] use of a cane was supported given the presence of the slight weakness, slight sensory deficit isolated to the right thigh, and the spinal imaging showing ongoing lumbar spine degeneration with sacroiliitis. The [ALJ] finds the opinion noting [Plaintiff] would be absent more than 4 days per month is inconsistent with the evidence of record. [Plaintiff] was engaging in no more than conservative treatment modalities with medications and physical therapy that he reported caused no side effects. [Plaintiff] was involved in no invasive procedures during the period under adjudication. He required no recurrent emergent treatment for symptom exacerbations, required no recovery period for procedures or treatments, and there was no recommendation for any invasive surgical procedures with a long-term recovery period. Further, [Plaintiff] required no hospitalization with a durational recovery period noted in the record during the period under adjudication. For these reasons, the [ALJ] finds Ms. Baker's opinion no more than partially persuasive as discussed herein.

(R. at 31-32.)

Against this backdrop, Plaintiff argues that the ALJ erred by not following the requirements of SSR 96-8p and 20 C.F.R. 416.920c. (ECF No. 9 at 17-20.) Plaintiff also argues that the ALJ erred in his consideration of both the consistency and supportability factors. With respect to the issue of consistency, Plaintiff contends that the ALJ's analysis was contradictory. As noted above, Plaintiff asserts that the ALJ failed to properly consider the issue of supportability altogether. (*Id.* at 19.) The Commissioner, on the other hand, contends that the ALJ's evaluation of Ms. Baker's opinion was reasonable. As support, the Commissioner notes that the ALJ credited Plaintiff's pain, just not to the extent of the limitations in Ms. Baker's opinion or Plaintiff's claims of disability. With respect to the issue of whether the ALJ properly considered the factors of

10

supportability and consistency when evaluating Ms. Baker's opinion, the Commissioner simply declares that he did. (ECF No. 11 at 4-6.)

As the above excerpt confirms, the ALJ failed to sufficiently discuss the supportability of Ms. Baker's opinion—*i.e.*, the ALJ did not adequately discuss whether or not Ms. Baker's "own objective findings and supporting explanations substantiate or support the findings in the opinion." Indeed, the Undersigned cannot discern what specific evidence the ALJ relied on in his evaluation of Ms. Baker's opinion, given his lack of both citations to the record or a more specific description of the records themselves. For example, the ALJ refers generally to "the objective evidence of record," and "the file." (R. at 31.) Further, the ALJ finds that Plaintiff's pain was generally managed with medications and that the use of a cane was supported under various circumstances but says nothing to indicate whether he is looking to Ms. Baker's own findings or whether he is looking to evidence from other medical sources. The same is true of the ALJ's conclusion regarding Ms. Baker's opinion that Plaintiff would be absent more than four days per month. While the ALJ recites various record evidence to support his conclusions, he does not do so in a way that clarifies whether this evidence is specific to Ms. Baker's findings or whether the ALJ is comparing other medical sources. While it may be that by "the file" the ALJ meant Ms. Baker's own records and that by "evidence of record" he was referring to other sources, the Undersigned should not have to guess the ALJ's intention here. Beyond this, the ALJ fails to explain why Ms. Baker's admission that additional testing was needed before she could confirm certain limitations undermined the persuasiveness of her opinion as to the limitations she did find.

Importantly, the Undersigned is not required to scour the 887 pages of Plaintiff's medical records to find the evidence to which the ALJ alludes here. *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021) ("It is not the role of a reviewing court to comb the record and imagine manifold ways in which the factors could have been applied to the evidence that was presented."); *Stemple v. Kijakazi*, No. 1:20-CV-485, 2021 WL 4060411, at *8 (N.D. Ohio Sept. 7, 2021) ("Where the ALJ's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded.") (quoting *Castello v. Comm'r of Soc. Sec.*, 5:09 CV 2569, 2011 WL 610590, at *2 (N.D. Ohio Jan. 10, 2011)). The Commissioner's cursory discussion and *post hoc* addition of certain record citations does nothing to change this. It is the ALJ's job in the first instance to articulate his reasoning. *Hardy,* at 909 (noting that "[t]he administrative adjudicator has the obligation in the first instance to show his or her work"). Indeed, the Court may not rely on *post hoc* arguments to find that the ALJ's decision properly evaluated the supportability factor. *Marika G. v. O'Malley*, No. 3:24-CV-00105-CRS-RSE, 2024 WL 5465207, at *5 (W.D. Ky. Dec. 19, 2024). Instead, it must find that the stated reasons "build an accurate and logical bridge between the evidence and the result." The Court cannot do so here. For this reason, the Court cannot find that substantial supports the ALJ's finding that Ms. Baker's opinion was partially persuasive regarding Plaintiff's physical limitations. *Goodman v. Soc. Sec. Admin.,* No. 1:22-CV-00995, 2024 WL 623894, at *15 (N.D. Ohio Feb. 14, 2024). Accordingly, remand is warranted.

## VI. CONCLUSION

For these reasons, it is **RECOMMENDED** that Plaintiff's Statement of Errors (ECF No. 9) be **SUSTAINED**, that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case under Sentence Four of § 405(g).

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and forfeiture of the right to appeal the judgment of the District Court. Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date:**
**December 3, 2025**

*/s/ Elizabeth A. Preston Deavers*
**ELIZABETH A. PRESTON DEAVERS**
**UNITED STATES MAGISTRATE JUDGE**

13